**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MASTER IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: February 9, 2023
Final Report: February 13, 2023

C. Barr Flinn, Esquire
Elisabeth S. Bradley, Esquire
Hana Brajuskovic, Esquire
Young Conaway Stargatt &
Taylor LLP
1000 North King Street
Wilmington, DE 19801

Michael A. Barlow, Esquire
Daniel J. McBride, Esquire
Eliezer Y. Feinstein, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

RE: *Handler v. Centerview Partners Holdings L.P.*,
C.A. No. 2022-0672-SG

Dear Counsel:

This letter addresses plaintiff David Handler's Motion to Compel Production

of Documents and Information from Defendant Centerview Partners Holdings L.P.

(the "Motion"). For the reasons explained below, I recommend that the Motion be

granted in part and denied in part. This is a final report pursuant to Court of

Chancery Rule 144.

## I. BACKGROUND

On August 1, 2022, plaintiff David Handler ("Plaintiff," or "Handler"), in his

alleged capacity as a partner of Centerview Partners Holdings L.P. ("Defendant," or

"Centerview Topco"), initiated this action seeking to compel the inspection of books and records of Centerview Topco pursuant to 6 *Del. C.* § 17-305.

According to his books and records complaint, Plaintiff joined Centerview in 2008 when he founded Centerview's Tech Team and became a partner of Centerview Topco's wholly owned broker subsidiary, Centerview Partners LLC, and Centerview's advisory business, Centerview Partners Advisory Holdings LLC. Verified Compl. to Compel Inspection of Books and Records ¶ 3, Dkt. No. 1 [hereinafter the "Handler Compl."]. In 2012, Centerview founders Robert Pruzan and Blair Effron "offered Handler a partnership with broader longer-term equity and economics in the overall business to be held through" Centerview Topco, and the parties thereafter operated under an oral partnership agreement. Handler Compl. ¶¶ 4-5. When, in 2021, Pruzan and Effron sought to renegotiate that arrangement, Handler served his demand, seeking to inspect eighteen categories of books and records of Centerview Topco.[1] *Id.* ¶¶ 7, 29.

---

[1] According to his demand, Plaintiff seeks books and records in order to "determine the amount of and value of his equity and partnership interests in the Companies;" "determine whether he has been properly compensated and whether he has received proper disbursements based on his interests in these entities;" "determine the rights associated with his equity and partnership interests in the Companies;" "evaluate how the revenues, profits, and excess profits or Investment Capital of Centerview have been calculated and distributed and whether he has been receiving his rightful share of each;" "gain clarity on the function of, funding of, and value of his Priority Capital Accounts;" and "ascertain all this information to, in part, meaningfully respond to the other partners' request for a

On August 29, 2022, Centerview Topco filed its own complaint against Handler in a related action, *Centerview Partners Holdings L.P. v. Handler*, C.A. No. 2022-0767-SG (the "Substantive Action"), seeking, among other things, a declaratory judgment that Handler "is not and never has been a partner (limited or otherwise) of" Centerview Topco. *Centerview Partners Holdings L.P. v. Handler*, C.A. No. 2022-0767-SG, Verified Complaint, Dkt. No. 1, "Prayer for Relief" [hereinafter the "Centerview Compl."]. The complaint in that action alleges that between 2012 and 2013, the parties negotiated a draft partnership agreement, but Handler refused to sign it. *Id.* ¶ 2. A partnership agreement for Centerview Topco (the "L.P. Agreement") was later finalized and executed in November 2013 by Pruzan and Effron, but not Handler. *Id.* ¶¶ 42, 44-45. According to Centerview Topco's complaint, between 2012 and 2021, "Handler never claimed to be (or acted as if he was) a Topco limited partner," nor did he receive a Schedule K-1 federal tax form reporting income, losses and dividends for Centerview Topco,[2] as Centerview Topco's other partners received in that period. *Id.* ¶ 6; Def.'s Opp'n to Pl.'s Mot. to Compel ¶ 4, Dkt. No. 66 [hereinafter "Opp'n"].

---

proposal to resolve certain disputes and issues in the partnership." *See* Handler Compl. ¶ 26.

[2] Instead, Handler received Schedule K-1 forms for Centerview Partners Advisory Holdings LLC. Centerview Compl. ¶ 6.

In the present books and records action, Defendant repeats its arguments that Plaintiff is not a partner of Centerview Topco, and therefore lacks standing to obtain the partnership's books and records. Opp'n ¶ 7.

On November 3, 2022, Vice Chancellor Glasscock held a scheduling conference, at which he determined that the most efficient way to stage the related proceedings was to stay the Substantive Action and bifurcate this summary proceeding in order to first resolve the predicate issue of Plaintiff's partner status in Centerview Topco. Nov. 3, 2022 Scheduling Conference Transcript 8:6-9:18, Dkt. No. 43 [hereinafter "Tr."]. A hearing to resolve Plaintiff's partner status and argument on Defendant's Motion for Judgment on the Pleadings is scheduled for April 5, 2023.

On January 9, 2023, Plaintiff moved to compel the production of various categories of documents responsive to Plaintiff's Request for Production Nos. 1, 2, 3 and 7, as well as responses to Plaintiff's Interrogatory Nos. 1, 2, 3 and 4. Pl.'s Mot. to Compel Production of Documents and Information from Def. 1, Dkt. No. 61 [hereinafter "Mot."].

## II. ANALYSIS

Court of Chancery Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Ct. Ch. R. 26(b)(1). While the scope of discovery under Rule 26 is broad, the Court also "has broad discretion in determining the scope of discovery." *Wei v. Zoox, Inc.*, 268 A.3d 1207, 1212 (Del. Ch. 2022); *see also* Ct. Ch. R. 26(b).

Compared to plenary proceedings before this Court, the scope of discovery permitted in books and records actions under 6 *Del. C.* § 17-305 and its corporate analog, 8 *Del. C.* § 220, is more limited. "Because the issues in a books and records case are narrow, discovery is necessarily narrow as well." *Maitland v. Int'l Registries, LLC*, 2008 WL 2440521, at *2 (Del. Ch. June 6, 2008). Parties may not use discovery to "expand a books-and-records action into a plenary proceeding …." *Lebanon Cnty. Employees' Ret. Fund v. Amerisourcebergen Corp.*, 2020 WL 132752, at *26 (Del. Ch. Jan. 13, 2020), *aff'd*, 243 A.3d 417 (Del. 2020).

Although the issues presented in a books and records action typically are narrow, discovery needs nevertheless "may vary with the nature of the defenses that the company interposes." *Chammas v. NavLink, Inc.*, 2015 WL 5121095, at *1 (Del.

Ch. Aug. 27, 2015). Here, a predicate issue to determining Plaintiff's entitlement to books and records is whether he is, in fact, a partner of Centerview Topco. While the Court "generally relies on the corporation's existing stock ledger" to summarily resolve stockholder status in a Section 220 proceeding, *Knott Partners L.P. v. Telepathy Labs, Inc.*, 2021 WL 5493092, at *4 (Del. Ch. Nov. 23, 2021), Centerview Topco does not maintain a similar "ledger" of partnership interests.[3] As a result, *some* factual inquiry into Plaintiff's alleged status as a partner of Centerview Topco is needed; hence Vice Chancellor Glasscock's decision to bifurcate the action and resolve that threshold issue through "some discovery and perhaps an evidentiary hearing." Tr. at 9:9. However, resolution of Plaintiff's broad discovery requests must also take into account the nature of this summary books and records action, for which a hearing is scheduled in less than two months.

---

[3] When asked at the November 3, 2022 scheduling conference whether Centerview Topco maintained a list of its partners, Defendant's counsel represented to Vice Chancellor Glasscock that "[t]here is a written partnership agreement, and Mr. Handler is not on that." Tr. at 14:9-10. Defendant now argues that "Topco's primary method for tracking its equityholders is by issuing each individual who holds Topco equity an annual K-1 showing that terminal value equity interest and corresponding tax basis," and suggests that discovery should be limited to production of *those* documents. Opp'n ¶ 17. At this stage of the proceedings, it appears that Centerview Topco does not maintain one centralized "ledger" of partnership interests and, as Vice Chancellor Glasscock already ruled, discovery into Plaintiff's status as a partner is needed.

### A.     Request for Production No. 3.

The Motion focuses primarily on Plaintiff's Request for Production No. 3, which seeks:

> All documents and communications concerning the status of Robert Pruzan, Blair Effron (or any entity in which Pruzan and/or Effron hold a beneficial interest), David Handler, David St. Jean, Mark Robinson, and/or Alan Hartman as an employee, partner, equity holder, or a member of any Centerview entity from 2008 to 2022, including without limitation all accounting records, ledgers, and tax records and filings identifying equity and capital holders and contributors.

Exhibits 1-6 to Pl.'s Mot. to Compel at 22-23 (pages numbered sequentially based on PDF), Dkt. No. 61 [hereinafter "Mot. Exhibits"]. Specifically, the Motion seeks (1) communications about Plaintiff's status as a partner of Centerview Topco; (2) the L.P. Agreement, including all schedules, attachments and amendments; (3) any documents listing the partners of Centerview Topco; and (4) accounting and tax records for Centerview Topco partners, and related communications.

### 1. Communications About Plaintiff's Partner Status.

The Motion seeks to compel the production of communications about Plaintiff's status at Centerview, including communications reflecting the parties' course of conduct demonstrating whether Plaintiff was treated as a partner of Centerview Topco. Mot. ¶¶ 1, 16, 23.

Defendant has not refused to produce communications about Plaintiff's partner status, which is the central issue to be addressed at the April 5 hearing. However, in responding to Plaintiff's request, Defendant unilaterally limited its document review and production to data from four custodians, restricted by undisclosed search terms and a date range of January 2012 (when Plaintiff and Centerview Topco first exchanged a draft partnership agreement) through May 2014 (when Plaintiff purportedly refused to sign it).[4] Opp'n ¶ 13. Plaintiff contends that "[a]*ll* communications in Defendant's possession concerning Plaintiff's status as partner during the time in which he alleges he was a partner" – from 2008 through the present – "are relevant and should be produced." Mot. ¶ 20 (emphasis added).

Defendant argues that communications addressing Plaintiff's partner status are most likely to fall within the time periods during which the parties negotiated the partnership agreement. That is not unreasonable, but Plaintiff is also correct that documents showing whether Plaintiff was treated as a Centerview Topco partner after those negotiations also may be probative of his partner status. Because the parties have not exchanged search terms, it is difficult to assess the burden associated

---

[4] After the Motion was filed, Defendant also "agree[d] to expand the date range of its email review from 2012 through 2022 for one of the categories of documents Handler seeks – namely, documents concerning Handler's annual compensation negotiations." Opp'n ¶ 27.

with either position.  Often, parties resolve similar disagreements by negotiating multiple sets of search terms to be applied across different date ranges, using more targeted terms for longer time periods.  I believe that approach is appropriate here. Accordingly, within 24 hours, Defendant should disclose to Plaintiff the search terms and date range(s) it has already applied to govern its review, and provide a corresponding hit report.  Plaintiff should then inform Defendant whether the search terms and date range(s) applied are acceptable, or propose additions if appropriate. Defendant should then provide a hit report for Plaintiff's proposal.  If the parties still cannot agree, they should submit the hit reports for the Court's consideration.

### 2.  The L.P. Agreement, Schedules, Attachments and Amendments.

Plaintiff also seeks a "complete copy" of the L.P. Agreement, including all schedules, attachments and amendments.  Mot. ¶ 2.

When asked at the November 3, 2022 scheduling conference whether Centerview Topco maintained a list of its partners, Defendant's counsel pointed to the L.P. Agreement, claiming "Mr. Handler is not on that."  Tr. at 14:4-10. According to the Motion, after making that representation, Defendant selectively produced a copy of the L.P. Agreement to Plaintiff, but withheld the referenced schedules (including those identifying "Interests in Operating Proceeds," "Class B

Units" and "Priority Capital Amounts"), purportedly because those schedules existed only as drafts.  Mot. ¶ 4.

At argument, the parties clarified that at least some draft schedules have now been produced.  Defendant's counsel explained that Defendant has produced drafts of the L.P. Agreement and its schedules that were created "closest in time to the critical dates," namely November and December 2012.

The L.P. Agreement and all schedules, attachments and amendments – draft or final – are plainly relevant to the parties' claims and defenses.  Defendant has not argued that it would be burdensome to produce them, nor has it asserted a claim of privilege over them.  Therefore, to the extent Defendant has not already produced all final versions of the L.P. Agreement, schedules, attachments and any amendments from 2012 through 2022, it must do so.[5]  To the extent Defendants' review of electronic communications uncovers non-privileged drafts of any of those documents, whether or not Plaintiff is on them, they should be produced as well.

### 3. Documents Listing Centerview Topco Partners.

Plaintiff also argues that documents concerning Plaintiff's status as a partner of Centerview Topco must include "[a]ny list of partners of Defendant in

---

[5] Latest-in-time "draft" schedules or attachments that are associated with a final L.P. Agreement must also be produced.

Defendant's possession, whether it lists Plaintiff or not …." Mot. ¶ 19. I agree that any document listing Centerview Topco's partners, whether or not Plaintiff appears on that list, is highly relevant to whether Plaintiff was, in fact, a partner, and must be produced.

### 4. Accounting and Tax Records for Centerview Topco Partners.

In addition to Plaintiff's partner status, Plaintiff's Request for Production No. 3 seeks documents, including communications, concerning the partner status of Pruzan, Effron, St. Jean, Mark Robinson and Alan Hartman,[6] "including without limitation all accounting records, ledgers, and tax records and filings identifying equity and capital holders and contributors." Mot. Exhibits at 22-23.

According to Plaintiff, in order to assess whether Plaintiff was treated similarly to, or differently from, other Centerview Topco partners or equityholders,[7] Plaintiff should be permitted to compare records for his accounts against documents showing how those other individuals were accounted for and/or taxed. Mot. ¶¶ 21-

---

[6] According to the Motion, Mark Robinson and Alan Hartman became partners of Centerview Topco in 2014. Mot. ¶ 13.

[7] As noted above, Defendant argues that the Schedule K-1 forms issued to Centerview Topco's "equityholders" – Pruzan, Effron, Robinson and Hartman – are the partnership analog of a stock ledger. At argument on the Motion, however, Defendant clarified its position that the only *partners* (as opposed to *equityholders*) of Centerview Topco are Pruzan and Effron.

22. In response, Defendant has agreed to produce Schedule K-1 tax forms issued to each Centerview Topco partner or equityholder from 2012 through 2022, but otherwise objects to producing documents responsive to this request, which it argues are the same documents sought in Plaintiff's books and records demand.[8] Opp'n ¶ 18.

In view of the broad discovery permitted by Rule 26, documents demonstrating whether Plaintiff was treated in certain respects like other Centerview Topco partners may have some relevance to Plaintiff's partner status. As a practical matter, however, time constraints inherent in a summary schedule and the narrow focus of a books and records action necessarily limit the scope of discovery. With those considerations in mind, Defendants should produce, for each year from 2012 through 2022, (1) documents sufficient to show on which Centerview entity's books and records the Priority Capital Amounts or "Accounts" held by Plaintiff, Pruzan, Effron, St. Jean, Hartman and Robinson were recorded; (2) Schedule K-1 forms sent to Pruzan, Effron, St. Jean, Hartman or Robinson from Centerview Partners Advisory Holdings LLC, if any exist; and (3) documents sufficient to show whether Pruzan, Effron, St. Jean, Hartman and Robinson filed Section 83(b) elections with

---

[8] Defendant also agreed to provide a verified interrogatory response identifying the individuals who received a Schedule K-1 from Centerview Topco from 2012 through 2022.

the IRS, to the extent such documents are in Defendant's possession.  Beyond that, ordering broad searches to unearth communications concerning accounting and tax issues involving other Centerview Topco partners or equityholders is not proportional to the needs of the case, which must remain a narrowly focused, summary proceeding.  *See Pearl City Elevator, Inc. v. Gieseke*, 2020 WL 5640268, at *2 (Del. Ch. Sept. 21, 2020) (explaining that "discovery in summary proceedings is necessarily (and appropriately) limited," weighing "the relevance versus the burden of producing documents" and denying discovery requests where the relevance of the documents sought was "minimal at best" and plaintiff would be receiving the "documents related to the core issues in dispute").

In opposing Plaintiff's requests, Defendant argues that some of these documents may overlap with the eighteen broad categories of documents sought in Plaintiff's books and records demand.  It is true that a plaintiff may not bypass the merits of her demand by requesting in discovery the very documents she seeks as final relief.  *See, e.g.*, *Maitland*, 2008 WL 2440521, at *2 (limiting discovery in books and records action where it would "effectively … grant [plaintiff] final relief in this proceeding"); *Fitzgerald v. Cantor*, 1998 WL 842278, at *1 (Del. Ch. Nov. 16, 1998) (denying motion to compel where "[t]he documents sought by Defendants in these requests [we]re the same documents underlying Defendants' books and

records claim"). However, as Vice Chancellor Glasscock has already ruled, Plaintiff is entitled to some discovery into his partner status; the documents, as limited above, are a small subset of those sought in Plaintiff's far broader books and records demand; and any specific concerns about sharing sensitive documents with Plaintiff could be mitigated through the two-tiered confidentiality stipulation entered in this action.

### B.      Request for Production Nos. 1 and 2.

The Motion also seeks to compel documents responsive to Plaintiff's Request for Production Nos. 1 and 2, which request "any actual, contemplated, or negotiated employment agreements, partnership agreements, LLC agreements, side letters, separation or settlement agreements, or other agreements concerning any Centerview members, equity holders, and/or partners;" "any such agreements concerning any of Robert Pruzan, Blair Effron (or any entity in which Pruzan and/or Effron hold a beneficial interest), David Handler, David St. Jean, Mark Robinson, and/or Alan Hartman;" and all communications regarding the same. Mot. Exhibits at 22.

In the Motion, Plaintiff argues, without explanation, that documents responsive to these requests are "obviously relevant." Mot. ¶ 19. Aside from L.P. Agreements between these individuals and Centerview Topco (which, as explained

above, Defendant must produce), these broad requests for other partners'

agreements with Centerview seem more designed to support the purposes in

Plaintiff's demand than to discover information relevant to his partner status.

Accordingly, Plaintiff's motion to compel documents responsive to Document

Request Nos. 1 and 2 is denied.[9]

### C.     Request for Production No. 7.

Plaintiff also seeks to compel the production of documents responsive to

Request for Production No. 7, which requests "documents sufficient to identify all

partners, members, and equity holders in *each Centerview entity* from 2008

through 2022, including any changes in equity ownership during that period."

Mot. Exhibits at 23 (emphasis added).  To the extent this request seeks information

about other partners' or equityholders' interests in Centerview Topco or

Centerview Partners Advisory Holdings LLC, it is fairly covered by the other

requests addressed above.  To the extent Plaintiff seeks information about other

Centerview entities, he has not explained how such information is either relevant

---

[9] For these same reasons, Plaintiff's motion to compel responses to Interrogatory Nos. 1 and 2 is also denied.

or proportional to the needs of the case.  Accordingly, Plaintiff's motion to compel

documents responsive to Document Request No. 7 is denied.[10]

## III.   CONCLUSION

For the reasons explained above, I recommend that the Motion be granted in

part and denied in part.  This is a final report pursuant to Court of Chancery Rule

144.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Master in Chancery


cc:     All counsel of record (by File & ServeXpress)

---

[10] For these same reasons, Plaintiff's motion to compel responses to Interrogatory Nos. 3
and 4, which seek information about other Centerview entities, is also denied.